IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT MOODY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 19-235 (MN) |
| | ) |
| TRUMAN MEARS, Warden, and | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

**<u>MEMORANDUM OPINION</u>**

Robert Moody. *Pro se* Petitioner.

Andrew Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

February 24, 2022
Wilmington, Delaware

*Maryellen Noreika* [signature]

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Petitioner Robert Moody ("Petitioner"). (D.I. 3). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 12; D.I. 13). The State then filed a Sur-Reply, to which Petitioner filed a Response. (D.I. 15; D.I. 19). For the reasons discussed, the Court will deny the Petition.

**I.     BACKGROUND**

> Around midnight on July 25, 2013, while Wilmington Police Officer Matthew Geiser patrolled a high crime neighborhood, he observed [Petitioner] riding his bicycle with a noticeable bulge around his right rear waistline. Based on his training and experience, he believed [Petitioner] was armed with a firearm. The officer ordered [Petitioner] to stop and sounded his airhorn. [Petitioner] looked directly at the officer and performed a "security check" of his right rear waistline with his hand. [Petitioner] sped up and turned down an alleyway behind the vacant Walt's Flavor Crisp store.
>
> Officer Geiser intercepted [Petitioner] at the other end of the alley. He ordered [Petitioner] to get off his bicycle and noticed [Petitioner] no longer had a bulge in his waistline. Officer Geiser and other officers searched the area and arrested [Petitioner] after finding a .357 Magnum loaded with three rounds of ammunition on the roof of one of the buildings that bordered the alley.

*Moody v. State*, 133 A.3d 981 (Table), 2016 WL 768353, at *1 (Del. Feb. 26, 2016).

In March 2014, a Delaware Superior Court jury found Petitioner guilty of carrying a concealed deadly weapon ("CCDW"), possession of a firearm by a person prohibited ("PFBPP'), and possession of ammunition by a person prohibited ("PABPP"). (D.I. 15 at 1). On July 24, 2014, the Superior Court sentenced Petitioner to a total of twenty-one years at Level V imprisonment, suspended after five years for decreasing levels of supervision. *See State v. Moody*, 2017 WL 5952762, at *1 (Del. Super. Ct. Nov. 30, 2017). Petitioner appealed, and the Delaware Supreme

Court affirmed his convictions and sentence on February 26, 2016. *See Moody*, 2016 WL 768353, at *1.

In April 2016, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 10-18 at 139-162). The Superior Court appointed counsel to represent Petitioner and postconviction counsel filed an amended Rule 61 motion on Petitioner's behalf. (D.I. 10-20 at 5-33). The Superior Court denied Petitioner's amended Rule 61 motion on November 30, 2017. *See Moody*, 2017 WL 5952762, at *4. The Delaware Supreme Court affirmed that decision on September 24, 2018. *See Moody v. State*, 195 A.3d 17 (Table), 2018 WL 4676706, at *4 (Del. Sept. 24, 2018).

Petitioner was released from prison on January 23, 2018 and began serving the probationary portion of his sentence. (D.I. 10-28 at 5; D.I. 15 at 2). His probation officer filed an administrative warrant on March 29, 2018 charging him with a violation of probation ("VOP"). (D.I. 15 at 2). On April 3, 2018, the Superior Court found Petitioner in violation of the terms of his probation and sentenced him to seven days of incarceration followed by descending levels of probation. (D.I. 10-26). On April 11, 2018, Petitioner was released from prison to serve the probationary portion of his VOP sentence. (D.I. 10-28 at 5).

Petitioner's probation officer filed an administrative warrant on November 7, 2018 alleging Petitioner violated the terms of his probation by incurring new charges (drug and firearms offenses). (D.I. 15 at 2). Petitioner was held in default of bail for his new charges and the pending VOP. (*Id*. at 3). On June 21, 2019, after a hearing, the Superior Court found Petitioner in violation of the terms of his probation and discharged him from Department of Correction supervision in Superior Court Case ID No. 1307020184 (the subject of the instant habeas Petition). (D.I. 10-27 at 1). That same day, Petitioner pled guilty in the Superior Court to PFBPP and CCDW in Superior

Court case ID No. 1811003124.  The Superior Court sentenced Petitioner to seven and one-half years of incarceration, followed by probation.  (D.I. 15 at 21-25).

## II.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000);

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

*Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to

6

factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III.  DISCUSSION

Petitioner's timely filed habeas Petition challenges his 2014 convictions for CCDW, PFBPP, and PABPP on the following three grounds: (1) there was insufficient evidence to support his convictions (D.I. 3 at 5); (2) the police did not possess reasonable articulable suspicion to stop and detain him and, therefore, violated his Fourth Amendment rights (D.I. 3 at 7; D.I. 3-1 at 3-6); and (3) the State engaged in prosecutorial misconduct during its closing argument by improperly vouching for its case (D.I. 3 at 8).

#### A.  Mootness

Pursuant to Article III of the Constitution, federal courts can only consider ongoing cases or controversies. *Lewis v. Continental Bank, Corp.*, 494 U.S. 472, 477-78 (1990); *United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir. 2002) (finding that an actual controversy must exist during all stages of litigation). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings," *Lewis,* 494 U.S. at 477-78, and there must be "a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). "[T]he question of mootness is one . . . which a federal court must resolve before it assumes jurisdiction." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

When a habeas petitioner challenges his underlying conviction, and he is released during the pendency of his habeas petition, federal courts presume that "a wrongful criminal conviction has continuing collateral consequences" sufficient to satisfy the injury requirement. *Spencer v. Kemna*, 523 U.S. 1, 8 (1998); *see Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001). Importantly, collateral consequences will not be presumed when a petitioner does not attack his conviction but, instead, challenges a "sentence that has already been served." *Burkey v. Marberry,*

7

556 F.3d 142, 148 (3d Cir. 2009).  In such cases, the collateral consequences must be proven and likely to be redressed by a favorable judicial decision.  *Id.* at 148; *Spencer*, 523 U.S. at 7.  In the absence of continuing collateral consequences, a federal district court does not have jurisdiction to review moot habeas claims.  *See Rice*, 404 U.S. at 246.

As a threshold issue, the State raises the possibility that the instant Petition could be dismissed as moot because Petitioner was fully discharged from his probation related to the 2014 convictions in June 2019, and his current custody is due to his conviction on charges in an entirely different case.  (D.I. 15 at 4-7).  The claims in the Petition, however, challenge the validity of Petitioner's 2014 convictions, and do not only seek immediate release from custody.  Additionally, Petitioner was in custody pursuant to his 2014 convictions when he filed the instant Petition.  Therefore, the Court presumes that Petitioner's 2014 convictions have continuing collateral circumstances sufficient to satisfy Article III's case-or-controversy requirement.

  **B.**  **Claim One:  Sufficiency of the Evidence**

In Claim One, Petitioner contends that there was insufficient evidence to support his convictions, because the State did not introduce any DNA or fingerprint evidence at trial.  Petitioner also asserts that the officer who discovered the gun on the roof did not know who put it there. (D.I. 3 at 5).  Petitioner presented the instant argument on direct appeal to the Delaware Supreme Court, which denied it as meritless.  Therefore, Claim One will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The federal law governing Petitioner's insufficient evidence claim is that which was articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326; *see also Gov't of Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). Reviewing courts cannot make their own credibility determinations when evaluating the sufficiency of the evidence. *See United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985). Finally, "it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Jackson*, 443 U.S. at 326.

Here, although the Delaware Supreme Court did not cite *Jackson* when denying Claim One, it applied a standard that comports with *Jackson*. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry under § 2254(d)(1) is not over, however, because it must also determine if the Delaware Supreme Court's denial of Claim One involved an unreasonable application of *Jackson*. When addressing Petitioner's instant insufficient evidence argument on direct appeal, the Delaware Supreme Court reviewed the evidence presented at trial and found:

> [Petitioner's] argument relies heavily on factual discrepancies and alternative scenarios for how the gun arrived on the roof and possible explanations for the bulge in his pants. Such questions of fact are resolved by the jury. [Petitioner] also cites *Crawley v. State* for the proposition that his proximity to the gun was insufficient to establish possession. In *Crawley*, police arrested the driver of a U– Haul truck and his two passengers after finding stolen items in the truck. Both passengers had met the driver that day. This Court overturned the passengers' convictions because there was no

9

> evidence presented that they had dominion and control over the vehicle or any of the stolen property found inside the truck.
>
> This case is distinguishable from *Crawley* in that it does not involve multiple defendants or hinge solely on [Petitioner's] proximity to the gun. Rather, Officer Geiser saw [Petitioner] with a bulge at his waistline. When Officer Geiser ordered [Petitioner] to stop, he fled. When police arrested [Petitioner], the bulge in his pants disappeared. No one else was in the alley or near where police found the gun. Viewing this evidence in the light most favorable to the State, including all reasonable inferences, the jury could have found beyond a reasonable doubt that [Petitioner] possessed the firearm and ammunition. It therefore was not an abuse of discretion for the Superior Court to deny [Petitioner's] motion for a new trial.

*Moody*, 2016 WL 768353, at *2 (cleaned up).

In order for a jury to find Petitioner guilty of CCDW, the State had to establish beyond a reasonable doubt that Petitioner concealed a firearm "upon or about [his] person without a license to do so." 11 Del. Code § 1442. In order for the jury to find Petitioner guilty of PFBPP and PABPP, the State had to prove beyond a reasonable doubt that Petitioner knowingly possessed a firearm and ammunition on July 25, 2013. *See* 11 Del. Code § 1448. Possession of a firearm and ammunition may be established by actual or constructive possession. To establish that Petitioner constructively possessed the weapon and ammunition, the State had to prove that he: "(1) knew the location of the gun [and ammunition]; (2) had the ability to exercise dominion and control over the gun [and ammunition]; and (3) intended to guide the destiny of the gun [and ammunition]." *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009). The State can prove the elements of CCDW and PFBPP through circumstantial evidence. *See Ross v. State*, 232 A.2d 997, 98 (Del. 1967); *Lively v. State*, 427 A.2d 882, 883 (Del. 1981); *see also United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (explaining "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone.").

The jury in this case was presented with the following evidence. Officer Geiser testified that he saw Petitioner riding a bicycle with a bulge around his right rear waistline. (D.I. 10-4 at 47-66). Given his training involving the characteristics of an armed gunman, Officer Geiser believed Petitioner was armed. When Officer Geiser approached Petitioner, Petitioner looked at Geiser and performed a "security check" of the bulge with his hand. Petitioner continued to ride his bicycle and turned down an alley. Officer Geiser stopped Petitioner at the other end of the alley and ordered him off the bicycle. At this point, Petitioner did not have a bulge in his rear waistline. Officer Geiser searched the area with other officers and discovered a loaded handgun on the roof of one of the buildings adjacent to the alley. Officer Geiser immediately arrested Petitioner. (*Id.*). The jury was also informed about the parties' stipulation that Petitioner was prohibited by law from possessing, owning, or controlling a firearm and/or deadly weapon. (D.I. 10-4 at 74).

In summary, the State proved all three elements of constructive possession through its presentation of the following facts. By grabbing the bulge at his waistline, Petitioner acknowledged he knew the location of the gun and exercised control over it. By throwing the gun on a roof in the alley while evading police, Petitioner intended to guide the destiny of the gun. After viewing the aforementioned evidence in a light most favorable to the State, the Court concludes that the Delaware Supreme Court's denial of the instant insufficient evidence claim did not involve an unreasonable application of *Jackson*. Accordingly, the Court will deny Claim One for failing to satisfy the standard of § 2254(d)(1).

    C.    **Claim Two: Fourth Amendment Violation**

In Claim Two, Petitioner contends that the gun should not have been entered as evidence during the trial because the police lacked reasonable and articulable suspicion to stop him. The State properly argues that this Fourth Amendment Claim is not cognizable on federal habeas

11

review under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). (*See* D.I. 15 at 17-18)

In *Stone*, the Supreme Court held that a federal court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state court. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing the petitioner's Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Notably, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id*.

Rule 41 of the Delaware Superior Court Criminal Rules authorizes a defendant to file a pre-trial motion to suppress evidence, thereby providing a mechanism for presenting Fourth Amendment issues to the Delaware State Courts. Consequently, no structural defect in Delaware's system prevented Petitioner from litigating Claim Two. Additionally, the fact that Petitioner's defense counsel did not file a motion to suppress the gun is immaterial to *Stone*'s "full and fair opportunity" analysis because it does not constitute a structural defect. *See, e.g., Marshall*, 307 F.3d at 82; *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986). Accordingly, the Court will deny Claim Two as barred by *Stone*.

### D. Claim Three: Prosecutorial Misconduct

In his final Claim, Petitioner contends that the prosecutor improperly vouched for the State's case during closing argument by making the following comment on the reasonable doubt standard: "What's reasonable – what's reasonable beyond a reasonable doubt is that [Petitioner] had that firearm. He knew he was prohibited. He knew he couldn't have it." (D.I. 3-1 at 110, p. 148). Although the record reveals that Petitioner did not present Claim Three to the Delaware Supreme Court on direct or post-conviction appeal, the Court provides the following additional information for context. On direct appeal, defense counsel filed a motion to withdraw and a Rule 26(c) no-merits brief. (D.I. 10-2). Petitioner presented Claim Three as an exhibit to the no-merits brief. (D.I. 10-3 at 21-22). After reviewing the no-merits brief, the Delaware Supreme Court "could not conclude that [Petitioner's] appeal [was] wholly without merit and devoid of any arguably appealable issue." (D.I. 10-8 at 3-4). Consequently, the Delaware Supreme Court granted defense counsel's motion to withdraw, but appointed substitute counsel to represent Petitioner on direct appeal and directed substitute counsel "to brief any issues presented by the record that he deems to have arguable merit, including the issue of whether the arresting officer had probable cause to stop and arrest [Petitioner], and any other issue raised in [Petitioner's] response to his former counsel's motion to withdraw." (D.I. 10-8 at 4). Substitute counsel did not include Claim Three in the Corrected Opening Brief that was presented to the Delaware Supreme Court. (D.I. 10-9). Petitioner also did not reassert Claim Three in his Rule 61 proceeding, nor did he raise a claim alleging that substitute counsel was ineffective for failing to raise Claim Three on direct appeal. Given these circumstances, the Court concludes that Petitioner did not exhaust state remedies for Claim Three.

At this juncture, any attempt by Petitioner to raise Claim Three in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as procedurally

13

defaulted under 61(i)(3) due to his failure to present the issue on direct appeal. *See Small v. Pierce*, 226 F. Supp. 3d 299, 318 (D. Del. 2016). Because there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rules 61(i)(1) and 61(i)(3) apply in this case,[2] any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claim Three as technically exhausted but procedurally defaulted. Therefore, the Court cannot review the merits of the instant Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner attempts to establish cause by blaming substitute appellate counsel for not raising Claim Three to the Delaware Supreme Court on direct appeal. Although an attorney's error can constitute cause for a procedural default, the petitioner must have first presented that ineffective assistance of counsel claim to the state courts as an independent claim and where it was determined that the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. Here, Petitioner never presented an ineffective assistance of counsel claim based on substitute appellate counsel's failure to raise a prosecutorial misconduct claim in his state collateral proceeding or in his subsequent post-conviction appeal. (D.I. 10-18 at 139-157; D.I. 10-20 at 5-33; D.I. 10-16). Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted,[3] *see* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse Petitioner's

---

[2] Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid. *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5). Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to Claim Three.

[3] Petitioner does not argue that post-conviction counsel was ineffective for failing to raise the issue of substitute appellate counsel's failure to include Claim Three on direct appeal.

procedural default of the substantive prosecutorial misconduct claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

In the absence of cause, the Court need not address prejudice. The miscarriage of justice exception to the procedural default doctrine also does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Three as procedurally barred from habeas review.

### IV.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

---

Therefore, the Court does not address the applicability of the limited exception to the procedural default doctrine established in *Martinez v. Ryan*, 566 U.S. 1 (2012).

15

## V.  CONCLUSION

For the reasons stated, the Court will deny the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.